**Ex parte Donna TURNER.**

**No. 52589.**

Court of Criminal Appeals of Texas.

Jan. 19, 1977.

Cleatus M. Phelan, McKinney, Frank Maloney and Philip A. Nelson, Jr., Austin, for appellant.

Tom O'Connell, Dist. Atty. and Verla Sue Holland, Asst. Dist. Atty., McKinney, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

PHILLIPS, Judge.

This is a post conviction habeas corpus proceeding under Art. 11.07, V.A.C.C.P., seeking petitioner's release from a conviction and five year sentence on December 5, 1973, in the 199th Judicial District Court of Collin County, Texas, for the offense of sale of heroin, which was affirmed by this Court in a per curiam opinion, No. 49,293, decided January 22, 1975. Petitioner filed an application for writ of habeas corpus in said trial court on March 27, 1975, upon which an evidentiary hearing was held in said trial court and record thereof forwarded to this Court. By per curiam opinion said relief requested was denied by this Court on December 8, 1975, but on motion for rehearing we instructed the trial court to conduct an additional evidentiary hearing allowing petitioner to call Duane Hamilton, with the right of both parties thereafter to produce any additional evidence desired. Such has been done and this Court now has before it for consideration said original application, two amended applications, the evidence presented in trial court at the trial court's initial evidentiary hearing and at said additional hearing, and the trial court's findings of fact filed at the conclusion of each of said hearings.

Petitioner contends that: (1) Evidence favorable to her defense was suppressed; (2) she was denied the right of confrontation and cross examination of witnesses; and (3) she was denied her right to compulsory process.

The evidence at said hearings reveals that petitioner's conviction was for selling a narcotic drug, to-wit: heroin, to Robert J. Harden on or about the 18th day of June, 1973, and that the State's entire proof of said offense by petitioner consisted of the testimony of Harden, an undercover narcotic agent of the Department of Public Safety; that on June 18 petitioner and her husband, Tommy Turner, arrived at Mary Lou Harrington's house in Plano, where Tommy Turner told Harden in petitioner's presence that he and she were going to pick up some "jive" and did he want any and they left the house returning later that evening, at which time Harden had another conversation with the Turners wherein petitioner said, "We have some pills left. Do you want them? They are good. One dime pill will get you off real good"; that he, Harden, gave Tommy Turner $110.00 at said time for which he received from Turner eleven pieces of tinfoil containing heroin and that neither Harrington nor Hamilton was present at either of said conversations, and Hamilton was not in any way a party to the offense.

Petitioner testified that on said day, after phone calls to the Turner residence, she and her husband went to the Harrington residence and were met by Mary Lou Harrington; that shortly thereafter Hamilton and Harden arrived; *that she saw Hamilton hand her husband Tommy Turner some money*; that she heard no conversation, saw and knew of nothing else and made no statements; that she and her husband left the house and proceeded to Dallas, where said Tommy Turner entered someone's house while she stayed in the car; that they then returned to the Harrington residence, where she was escorted on a tour through the house, and that she had no knowledge of any sale of drugs.

Thus, the guilt or innocence of petitioner resolved itself down to the question of whether the jury believed petitioner or Harden was telling the true story. Since the petitioner carried the heavy onus of an accused's obvious motive to fabricate, any fact or circumstance from which a juror might reasonably infer motive for said Harden to fabricate or a willingness to do so or that might tend to corroborate petitioner's version was critical to petitioner's defense.

Based upon its evidentiary hearings in this habeas corpus proceeding, the trial court made findings of fact that can be summarized as follows:

1. That the State suppressed the fact that Harden effected Hamilton's release from jail on June 13, 1973, just five days prior to the alleged offense.

2. That Harden deliberately suppressed evidence that he contacted Sgt. Matthews of the Plano Police Department to effect said release of Hamilton from said jail.

3. That said Sgt. Matthews accomplished Harden's requested release by contacting Assistant District Attorney Dunn and having Dunn sign Hamilton's bail bond.

4. That said Assistant District Attorney Dunn testified at petitioner's trial that his making of said bond was at the request of Officer Mock.

5. That he, the trial judge at petitioner's trial, relied on Harden's denial of the existence of any relationship with Hamilton in denying petitioner the right to call Hamilton as a witness on the ground of Hamilton's claim of his privilege against self incrimination.

6. That Hamilton's said Fifth Amendment claim was, in fact, without substance.

■ Though this Court has the ultimate power to decide matters of fact in habeas corpus proceedings, generally if the trial court's findings of fact are supported by the record, they should be accepted by this Court. *Ex parte Davila,* Tex.Cr.App., 530 S.W.2d 543; *Ex parte Lemay,* Tex.Cr.App., 525 S.W.2d 1; *Ex parte Williams,* Tex.Cr. App., 486 S.W.2d 566.

The State contends that of the few questions pertaining to Hamilton and Matthews it permitted Harden to answer instead of preventing same by its objections, none of Harden's answers to same was a specific positive falsehood, but such is not the ultimate issue as to evidentiary support for the findings that the State *suppressed* the fact of Harden's effecting Hamilton's release from jail a few days prior to the alleged offense. Any trier of fact deciding the ultimate issue of State *suppression* of said fact was entitled to consider the totality of the following evidence and actions of Harden, the Assistant District Attorney who testified in the case, and the witness Sgt. Matthews and all reasonable inference therefrom.

Harden testified that he couldn't recall the first time he met Hamilton; that he didn't recall going to the Harrington house with Hamilton on June 18, 1973; that he didn't recall Hamilton's making telephone calls on that date; that he couldn't recall if he conversed with Sgt. Matthews regarding Hamilton on June 18th, 17th or 16th; that Hamilton was not in any way a party to the offense. When asked on cross examination as to whether he had conversed with Sgt. Matthews about Hamilton, the Assistant District Attorney immediately objected on the ground of immateriality and was sustained. On being asked on cross examination whether he recalled any conversation with Sgt. Matthews about Hamilton back through history, the Assistant District Attorney immediately objected upon the ground that such was improper and was sustained. At said trial when Plano Police Sgt. Matthews was asked on cross examination if Hamilton furnished information, the Assistant District Attorney immediately interrupted the question, claiming the privilege to forbid inquiry as to any informer, which claim was sustained by the court, and upon said Sgt. being asked thereafter on cross examination as to whether he made arrangements to get Hamilton out of jail, the Assistant District Attorney objected on the ground such was immaterial and was sustained. Another Assistant District At-

torney, Robert Dunn, testified at said trial that he made Hamilton's bond at the request of a Plano policeman named Johnny Mock, and when asked if such wasn't unusual for a member of the District Attorney's staff to make a bond, the Assistant District Attorney immediately objected on the ground that such had nothing to do with the case and was sustained.

The evidence at said evidentiary hearings in this proceeding revealed the true facts to be that said Assistant District Attorney Dunn posted bond for Hamilton at the request of Sgt. Matthews and that Sgt. Matthews so requested same because Harden called him and asked that he do so.

■ Although at the first evidentiary hearing petitioner presented positive testimony by Sgt. Matthews given at a later trial that it was he who requested Assistant District Attorney Dunn to post bond for Hamilton and the trial court so found same as a fact, neither at said hearing nor at the second evidentiary hearing did the State produce Officer Mock or said Dunn to contradict Matthews' testimony or explain Dunn's mistake in regard thereto. Under such set of facts, we must presume that said Officer Mock's testimony would have verified the testimony of Sgt. Matthews at the subsequent trial which was admitted at the first evidentiary hearing. *Sims v. Georgia,* 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967).

At the last of said evidentiary hearings, Hamilton, after assurance of immunity, admitted his acquaintance with Harden, but very evasively testified that he *could not recall*: how long he had known Harden; if he was working for Harden as an informant in 1973; whether he was instructed by Harden to call Turner in order to get Turner to buy heroin for him; whether he told Turner that he wanted Turner to buy heroin for him; whether he had a conversation with Turner outside petitioner's presence; whether he introduced Turner to Harden; whether he was in jail on June 13, 1973, or ever requested Harden to obtain his release; the purpose of his invitation to Harrington's house or the time and date; his pos-

sessing heroin on any occasion or any of his sources of heroin, though he admitted having been an addict; how he got the money to supply his habit; any discussion with Harden concerning his release on June 13, 1973; how his bond was made on June 13, 1973; or any meeting with Harden thereafter.

He admitted that it was possible: that he made telephone calls to Tommy Turner in Frisco and met him at Harrington's house as a result of the calls; that he and Harden arrived at the Harrington house together; that he'd previously introduced Turner to Harden; that he was working for Harden as an informant during the period in question; that he was an addict (and later said he would not dispute Harden's testimony that he was an addict); and that he obtained the presence of the Turners at the Harrington house for Harden's purposes. We hold that the above evidence, actions and omissions of the agents of the State of Texas, considered as a whole, and the facts admitted by Hamilton, coupled with the manner and substance of his evasive answers to other facts, clearly support the findings of the trial court that *the State* suppressed the fact that Harden effected the release of Hamilton on bail on June 13, 1973, and all other findings by the trial court.

■ Whether Assistant District Attorney Dunn, who testified that he bonded out Hamilton at the request of one Mock, or the District Attorney O'Connell, who tried petitioner's case, negligently or by design suppressed the truth ascertained and found by the court at the evidentiary hearing herein, that Dunn made said bond at the request of Sgt. Matthews, is not controlling, for it is the character of the evidence, not the character of the prosecutor, that determines whether suppression of evidence peculiarly within the possession of the State results in constitutional error. *U. S. v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, even without the above rule, we would hold the State and even its prosecutor at peti-

tioner's trial to be presumptively knowledgeable as to the true facts pertaining to the reason for Hamilton's release. As stated by the United States Supreme Court in *U. S. v. Agurs,* supra:

"Nor do we believe the constitutional obligation is measured by the moral culpability, or the willfulness, of the prosecutor. If evidence highly probative of innocence is in his file, he should be presumed to recognize its significance even if he has actually overlooked it."

And in *Giglio v. U. S.,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972):

"Moreover, whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. The prosecutor's office is an entity and as such it is the spokesman for the Government. A promise made by one attorney must be attributed, for these purposes, to the Government . . . To the extent this places a burden on the large prosecution offices, procedures and regulations can be established to carry that burden and to insure communication of all relevant information on each case to every lawyer who deals with it."

▇▇▇ Under the *Agurs* decision, a State is required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution to respond to any specific request by the accused for factual information in the hands of the State or its agents if even a substantial basis for claiming materiality exists, either by furnishing the accused said information or submitting the facts to the trial judge. Defense counsel's actions in this case so clearly exhibited his desire to obtain from the State and its agents said suppressed facts that they should be deemed not only a specific request, but an urgent plea for their revelation. In *Agurs,* supra, the Court stated, "When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." We also hold that the suppression here meets the test in *Agurs* of prejudicial error even in absence of a specific request, for in the context of the entire record the verdict

was already of questionable validity and said suppressed evidence would have created a reasonable doubt that did not otherwise exist.

The suppressed facts of Harden effecting Hamilton's release a few days before the alleged offense would cause all but the most naive to take into consideration that Harden may have been motivated to testify as he did because if it were shown in evidence that he, Hamilton, made the actual purchase, a failure to prosecute him would expose his true status and he also might have been motivated to testify as he did because Hamilton was of value to him, and if petitioner were not locked up in the penitentiary, she might destroy any further usefulness of Hamilton by telling others in the future about his conduct prior to her arrest. Though Harden probably did not make a positive specific misstatement of fact, the jury could obviously have concluded, if said suppressed facts had been revealed, that he knew the facts defense counsel was seeking to find out about and that he was biased to the extent that he *was willing* to skirt around revelation of the truth he knew was being sought. The law applicable thereto is as follows:

". . . [S]uppression of material evidence justifies a new trial 'irrespective of the good faith or bad faith of the prosecution.' . . . When the 'reliability of a given witness may well be determinative of guilt or innocence,' *nondisclosure of evidence affecting credibility falls within this general rule.*" (Emphasis added) *Giglio v. U. S.,* supra.

"A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant to discrediting the witness and affecting the weight of his testimony.' 3A Wigmore, Evidence § 940, at 775 (Chadbourn rev. 1970). We have recognized that *the exposure of a witness'*

*motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."* (Emphasis added) *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

In addition to being evidence that would tend to establish the above motives for fabricating by Harden and his willingness to dodge revealing the facts he must have known the defense was seeking to discover, said evidence of Hamilton's true relationship with Harden would also tend to circumstantially corroborate the testimony of petitioner in virtually every phase of her testimony that conflicted with Harden's.

Though the reasoning of *Roviaro v. U. S.,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), that the effect that failure to reveal the name of an informant denies an accused a fair trial when said informant was actually present at the scene of the alleged crime and could give material testimony thereon is respected by this Court, we do not deem *Roviaro* specifically applicable to this case, since said decision was a direct appeal and involved only the Supreme Court's supervisory power over evidentiary matters in the Federal Courts and not a constitutional adjudication of the constitutional power of states in enforcement of an informer's privilege. *McCray v. State of Illinois,* 384 U.S. 949, 86 S.Ct. 1575, 16 L.Ed.2d 546 (1966). The State's right to refuse disclosure of the identity of an informant is recognized to protect the informant and his family due to his usefulness to the Government as a necessary tool of law enforcement. However, where the evidence shows an informant was in a position at the time of the alleged crime to likely possess personal knowledge of material facts calculated to be vital to a true determination of innocence of guilt, society's need of a truthful verdict outweighs its need, in that particular instance, for concealment of the identity of the informer. Common law and statutory privileges, not of constitutional dimension, must yield when in direct conflict with those constitutional rights essential to the concept of Due Process within the Fourteenth Amendment to the Constitution of the United States and further guaranteed in this State by Art. I, Sec. 19 (Due Process) and Art. I, Sec. 10 (Confrontation and Compulsory Process for Witnesses) of the Texas Constitution. Such has been held by the Supreme Court in *Davis v. Alaska,* supra, as follows:

"We do not and need not challenge the State's interest as a matter of its own policy in the administration of criminal justice to seek to preserve the anonymity of a juvenile offender . . . Serious damage to the strength of the State's case would have been a real possibility had petitioner been allowed to pursue this line of inquiry. In this setting we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender . . .

The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness."

In *Washington v. State of Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), it was said:

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

\* \* \* \* \* \*

. . . The Framers of the Constitution did not intend to commit the futile act of giving to a defendant the right to secure attendance of witnesses whose testimony he had no right to use. The judgment of conviction must be reversed. It is so ordered."

"Few rights are more fundamental than that of an accused to present witnesses in

his own defense." *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

The law is well settled that if Hamilton was actually working at the direction of and in conjunction with Agent Harden, he was acting as a State Agent and his claim of privilege under the Fifth Amendment was spurious. *Woodward v. State,* Tex.Cr. App., 490 S.W.2d 850. The trial court found as a matter of fact that he would not have granted Hamilton said privilege if he had known the facts subsequently found to have been within the knowledge of the agents for the State at the time of said trial. Thus, the suppression of facts found by the trial court deprived petitioner of the opportunity to call Hamilton to the stand and examine him as to the facts in issue and his true connections with Harden, in violation of her said rights of compulsory process under the Federal and Texas Constitutions. We cannot say that Hamilton would have testified at said time, but if his testimony then had been similar to that at the last evidentiary hearing herein, the impact of his evasions of virtually every question pertaining to his relationship with Harden would have obviously been of benefit to the petitioner.

Furthermore, considering the record as a whole, it appears that the primary question here was not the petitioner's efforts to *obtain the identity of the informer,* but was the petitioner's efforts to *prove to the jury the true relationship* between the State's primary witness and a person at the scene, *known by the petitioner to be an informer,* in order to show said witness' motives to fabricate, to cross examine him otherwise, and to circumstantially corroborate the petitioner's version of the facts.

Thus, we concur with the conclusion of the Honorable Trial Court that the suppression of facts found by him to have occurred rendered petitioner's conviction without due process of law.

Petitioner's conviction is set aside and she is ordered released to the custody of the Sheriff of Collin County to answer the indictment in Cause No. F73–209R.