Larry Wayne **REESE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 107–93.

Court of Criminal Appeals of Texas, En Banc.

June 8, 1994.

Mark W. Stevens, Galveston, for appellant.

Michael J. Guarino, Dist. Atty., and B. Warren Goodson, Jr., Asst. Dist. Atty., Galveston, Robert Huttash, State's Atty., Austin, for the State.

Before the court en banc.

### OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

OVERSTREET, Judge.

Appellant was indicted for the offense of delivery of a controlled substance, Tex. Health & Safety Code Ann. § 481.112, alleged to have been committed on or about November 6, 1990 in Galveston County. A jury convicted appellant of delivery of a controlled substance, namely cocaine, and assessed punishment, enhanced by the use of a prior felony conviction, at seventy (70) years confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant filed a motion for a new trial. After hearing same, said motion was denied by the trial court. The Fourteenth Court of Appeals affirmed. *Reese v. State*, 846 S.W.2d 437 (Tex.App.—Houston [14th Dist.] 1992). This Court granted appellant's petition for discretionary review.[1]

---

1. We granted the following grounds for review:
 (1) "The court of appeals erred in affirming and refusing to rule as a matter of law, that the

use of contingent-fee informants targeting specifically designated individuals so far de-

## Pertinent Facts

On November 6, 1990, Officer William Rankin [hereinafter Officer Rankin], with the Galveston Police Department working in an undercover capacity purchased cocaine from appellant, Larry Wayne Reese. The offense allegedly took place in an alley between two residences in Galveston County. Officer Rankin along with a police informer, Dal Bosco, rode together in a cab to the vicinity of the offense. Officer Charles Roe followed the pair in an unmarked police vehicle for surveillance.

Dal Bosco spotted appellant, exited the cab and proceeded toward him. Dal Bosco called to Officer Rankin to come and meet with appellant in order to make the purchase. The three met in the alley. Officer Rankin was standing approximately 2–4 feet from appellant. Officer Rankin offered to purchase twenty dollars worth of cocaine. Appellant removed a matchbox containing approximately five to ten packets of cocaine from his pants pocket. Appellant removed a packet and handed it to Dal Bosco. Officer Rankin objected to the amount of cocaine in the packet. He and appellant argued over the quantity and price. Finally, appellant retrieved the first packet from Dal Bosco, took another packet from the matchbox and handed it to Officer Rankin. Officer Rankin then handed appellant twenty dollars. He and Dal Bosco left the scene.

Neither officer mentioned Dal Bosco's name or his participation in the drug transaction in their reports. The prosecutor learned of Dal Bosco's identity and involvement a day before trial. The following day the prosecutor informed appellant's counsel of Dal Bosco's existence and location. Appellant's counsel subpoenaed Dal Bosco who was now in the Galveston County jail.

In response to a defense question, Officer Rankin testified that neither he nor Dal Bosco used any form of persuasion or induced appellant to engage in the offense. He testified that he did not detect any reluctance of appellant to engage in the offense. Appellant did not testify at trial. At trial, Dal Bosco claimed a right not to answer questions, invoked his rights under the Fifth Amendment of the United States Constitution, and did not testify in the presence of the jury. Dal Bosco gave limited testimony outside the presence of the jury. He also testified at the motion for a new trial hearing.

## I.

## Discussion

■ Appellant's first ground for review urges that the use of a contingent fee paid informant to make a case against a targeted suspect violates the due process and due course of law provisions of the United States and Texas Constitutions, respectively. Appellant concedes that "paid informants in and of themselves are permitted and are nothing new under the law ..." Appellant asserts, however, that his due process and due course of law rights were violated because Dal Bosco's identity and participation were not timely disclosed, the officer's promise that Dal Bosco would not have to testify, and Dal Bosco's enforcing of the bargain through a Fifth Amendment claim of privilege.

■ It is well settled that the use of informants and undercover agents is permissible in government investigations. *Sorrells v. United States,* 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). The protection of due process comes into play only when the government activity in question violates some protected right of the defendant. *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (plurality opinion). Due process condemns convictions brought

parts from accepted standards as to render the prosecution illegal."

(2) "The court of appeals erred in affirming, notwithstanding the trial court's permitting informant Dal Bosco, a witness and police agent, to assert a fifth amendment privilege."

(3) "The court of appeals erred in refusing to rule that an entrapment charge was supported by the evidence."

(4) "The court of appeals erred in finding error harmless."

(5) "The court of appeals erred insofar as it assumed, without basis in the record, that the testimony of Dal Bosco would be consistent with that offered by peace officers who were the state's witnesses."

about by methods that offend "a sense of justice," "shocks the conscience," or run counter to the "decencies of civilized conduct." *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

In support of his contentions appellant relies on two federal cases, *Williamson v. U.S.*, 311 F.2d 441 (5th Cir.1962), *cert. denied*, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 724 (1965) and *U.S. v. Cervantes-Pacheo*, 800 F.2d 452 (5th Cir.1986) (panel opinion). *Williamson, supra*, arguably, prohibits law enforcement agents from targeting certain suspects for investigation and paying informants a specified sum if they can implicate those suspects.[2] *Id.* at 444. The government officials in *Williamson, supra*, hired an informer to infiltrate a bootlegging operation. The informer was promised payment if the informer could "catch" Williamson and his partner. The court concluded that "it may possibly be that the government investigators had such certain knowledge that [the defendant was] was engaged in illicit liquor dealing that they were justified in contracting the [the informer] on a contingent fee basis." *Id.* The court, however, condemned deposition testimony of the informer which failed to explain or justify a need for such system. *Id.*

In *Cervantes-Pacheo, supra*, the informer's payment was not only contingent upon his performance but also included the quality of his testimony at trial. The case was remanded for a new trial and the panel held that the informant's testimony was inherently untrustworthy and should have been excluded. *Id.* at 460.

Neither of these cases support appellant. On rehearing en banc the Fifth Circuit in *United States v. Cervantes-Pacheco*, 826 F.2d 310 (5th Cir.1987), *cert. denied*, 484 U.S.

1026, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988), replaced the panel conclusions and affirmed the conviction. The court also overruled *Williamson's* per se rule that contingent fee informants are incompetent witnesses. *Id.* at 315–316. In the newer version of *Cervantes-Pacheco* the court recognized, as Williamson itself did, that it is sometimes necessary to compensate an informant before the informer will agree to undertake the often dangerous task of undercover investigation. *Id.* at 315. There the court held that informants that are promised a contingent fee by the government are not disqualified from testifying. *Id.*

The testimony of the informants was proffered in both cases. The courts found the informant's testimony unreliable because of the incentive to fabricate. Neither court found that the use of contingent fee informants violated due process. Thus, appellant cannot reasonably rely on either of these cases. Moreover, the informant in this case did not testify at trial.

Similarly, in *United States v. Jones*, 575 F.2d 81 (6th Cir.1978), a case involving interstate transportation of firearms, the court found that no due process violation occurs in the use of contingent fee informants. The informants were acquaintances of the defendant and paid to procure evidence against the defendant. They were instructed to buy firearms from the defendant and promised payment if the investigation was successful. The informants did not testify at trial. The government agent, however, testified regarding the informants' purchase.

In this instant case Dal Bosco did not testify at trial. Officer Rankin did testify concerning Dal Bosco's involvement and pay arrangement. Dal Bosco received payment for his participation in the transaction after

---

2. *Williamson's* progeny interpret *Williamson* inconsistently. *See, United States v. Garcia*, 528 F.2d 580, 586 (5th Cir.1976), *cert. denied*, 429 U.S. 898, 97 S.Ct. 262, 50 L.Ed.2d 182 (1976) (concluding that *Williamson* condemned the use of a contingent fee where it involves the promised payment of a specified sum to convict a specified suspect); *United States v. Onori*, 535 F.2d 938, 942 (5th Cir.1976) (condemning where a specific sum is for successfully incriminating the indicated defendant); See, also, *United States v. Yater*, 756 F.2d 1058, 1067 (5th Cir.1985), *cert.*

denied, 474 U.S. 901, 106 S.Ct. 225, 88 L.Ed.2d 226 (1985). *But see, Harris v. United States*, 400 F.2d 264, 266 (5th Cir.1968) (contingent fee arrangement justified where government has prior knowledge that the targeted suspect is committing unlawful acts prior to the institution of the contingent fee arrangement); *Hill v. United States*, 328 F.2d 988 (5th Cir.1964), *cert. denied*, 379 U.S. 851, 85 S.Ct. 94, 13 L.Ed.2d 54 (1964) (contingent fee arrangement justified where defendant had a past record of whisky violations and neighbors complained of his illegal activity).

appellant was arrested and not for any testimony or contingent upon appellant's conviction. As to appellant's untimely disclosure claim we agree with the court of appeals' disposition. We conclude that the government conduct in the instant case, under the facts alleged by appellant, is not so outrageous that it violates fundamental fairness or is shocking to a universal sense of justice. Appellant does not direct this Court's attention to any method that offends fundamental fairness.

■ Due process in both state and federal constitutions includes and means that an accused shall, in a criminal case, be accorded that fundamental fairness necessary to due administration of justice. *Zepeda v. State,* 773 S.W.2d 730 (Tex.App.—San Antonio 1989, no pet.) (citing *Webb v. State,* 161 Tex. Crim. 442, 278 S.W.2d 158, 160 (1955)). We are not persuaded that the use of a contingent fee informant in investigations of targeted persons suspected of engaging in illegal activity violates accepted standards of fundamental fairness. Appellant's first ground for review is overruled.

■ Appellant's third ground for review complains that the court of appeals erred in refusing to rule that entrapment was supported by the evidence. Appellant argues that the number of cases Dal Bosco worked on, the way he was paid, the police exerting no control over Dal Bosco, the police targeting appellant, and appellant expressing hesitation when approached by Officer Rankin combine to demonstrate that Dal Bosco was a state agent and "set up" appellant.

■ Whenever a defensive theory is raised by the evidence, the defendant is entitled to a jury instruction on that theory. *Booth v. State,* 679 S.W.2d 498 (Tex.Cr.App. 1984). In determining whether the evidence raises the issue of a defensive charge, this Court must consider all the evidence raised at trial, regardless of the strength of the evidence or whether it is controverted. *Id.* at 500.

■ The defense of entrapment is found in Section 8.06, Tex. Penal Code Ann. (Vernon 1978).[3] In order for an appellant to raise a claim of entrapment he must initially establish a prima facie showing of such a defense. *Richardson v. State,* 622 S.W.2d 852 (Tex.Cr.App.1981). In the instant case there must be some evidence adduced at trial tending to show that appellant was induced by the law enforcement agents to deliver the cocaine and the means of inducement were likely to cause a person to commit the offense. The issue of entrapment is not raised where the facts only indicate that the criminal design originates in the mind of the accused and the law enforcement officials or their agents merely furnish opportunity for or aid the accused in the commission of the crime. *Lopez v. State,* 574 S.W.2d 563, 565 (Tex.Cr.App.1978).

The court of appeals concluded that "[a]lthough defense counsel repeatedly used the word "entrapment" in questioning witnesses and during bench conferences, there is simply no evidence in the record itself that raises an issue of entrapment." We agree. The evidence appellant points to shows only that Dal Bosco acting in accordance with instructions from a law enforcement agent under Tex. Penal Code Ann. § 8.06(b). The only evidence remotely suggesting entrapment was Dal Bosco's testimony at the motion for new trial hearing that appellant had initially said, "Don't mess with me or something to that effect." Appellant does not show any evidence, weak or otherwise, tending to suggest that Dal Bosco or Officer Rankin persuaded or induced him to deliver the cocaine. Appellant's third ground for review is overruled.

---

**3.** Section 8.06 provides:

(a) It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

(b) In this section "law enforcement agent" includes personnel of the state and local law enforcement agencies as well as of the United States and any person acting in accordance with instruction for such agents.

Appellant's fourth ground for review contends that the court of appeals erred in finding error harmless. We note that appellant asserts that the court of appeals "purported to find any error in the denial of an entrapment charge 'harmless.'" The court of appeals never found error in the first place, therefore appellant's fourth ground for review is without merit and therefore is overruled.

■ Appellant's fifth ground for review urges that the court of appeals erred in assuming that Dal Bosco's testimony would be consistent with the officers'. Appellant has failed to brief this ground. Our review of the record reveals that Dal Bosco's testimony at the motion for a new trial hearing was consistent with and cumulative of the officers who testified at trial in all material aspects. Therefore, the court of appeal did not err. Accordingly, appellant's fifth ground for review is overruled.

Appellant's second ground for review urges that the trial court erred in permitting informer Dal Bosco to assert a Fifth Amendment privilege. Appellant claims reversible error because the trial court refused to require Dal Bosco to testify before the jury. He contends that Dal Bosco was a material witness to the transaction and a state agent. He also contends that the trial court failed to conduct a meaningful examination into the legitimacy of Dal Bosco's privilege claim. The court of appeals held that Dal Bosco's "constitutional right against self-incrimination was properly honored."

■ The record reveals that during a bench conference at trial, Dal Bosco's appointed counsel informed the court that Dal Bosco did not wish to testify. Outside the presence of the jury, the court, after determining that Dal Bosco had conferred with his counsel and understood his rights, inquired as follows:

The Court: All right sir, Being aware of your rights do you wish to give testimony?

Dal Bosco: No, sir.

The Court: Why would you decline? You have to tell me the reason.

Dal Bosco: Well, it might incriminate me for the main reason. And . . .

The Court: All right.

Appellant's counsel agreed that Dal Bosco had a right to exercise his Fifth Amendment privilege against self-incrimination, but urged that he could only assert that right in open court before the jury. The court disagreed and so do we. In *Victoria v. State*, 522 S.W.2d 919 (Tex.Cr.App.1975), this court held that the defendant did not have a right to interrogate the witness before the jury and have her invoke the privilege when each question was asked. *Id.* at 922. Defense counsel complained that "he wanted to ask Dal Bosco what his dealings with the police were, why his name was omitted, and what he saw out there." Outside the presence of the jury the court allowed defense counsel to question Dal Bosco. The following transpired:

Defense Counsel:

Q. Were you promised by the police that what has happened in here today wound never happen, that you would never have to testify?

A. Yes.

Q. How much were you paid to make this case?

A. I'm not sure.

Q. I think earlier you gave us a figure of maybe a hundred dollars. Is that possible?

A. Could be.

Q. Did you ever do a contract with the police whereby for an earlier charge against you they give you lighter treatment if you cooperated?

A. No, sir.

Defense counsel asserted that he would like to try and raise the defense of entrapment through Dal Bosco. The court gave permission for defense counsel to question further but he declined and re-urged that he should be allowed to question Dal Bosco in front of the jury. The court inquired of Dal Bosco again.

The Court: Let me ask you again. Is it still your intention any question, any of these questions that's been posed to you to answered them or decline to answer them?

Dal Bosco: I decline to answer them.

The Court: On what ground?

Dal Bosco: Because it's detrimental to my health, number one.

The Court: We can't sustain that one.

Dal Bosco: Okay. I feel like it would incriminate me.

The Court: I sustain the objection. He has that right. Take the man out. Let's proceed.

At the motion for a new trial hearing, Dal Bosco testified about his observance of the drug transaction between appellant and Officer Rankin although he continued to assert a Fifth Amendment privilege.

## II.

The Fifth Amendment privilege against self-incrimination is binding upon the states through the Fourteenth Amendment. The Fifth Amendment of the United States Constitution provides in part: "No person ... shall be compelled in any criminal case to be a witness against himself...." It is axiomatic that the right against self-incrimination is to prohibit compulsion of testimony which may expose a person to criminal prosecution. This Court has held that the right is not confined to an accused only, but extends to witnesses generally in any type of case, civil or criminal, or in proceedings before a grand jury. See *Ex parte Muncy*, 72 Tex.Crim. 541, 163 S.W. 29 (1914); *Fleishman v. State*, 91 S.W.2d 493 (Tex.Civ.App.—Texarkana 1936, no writ). The Supreme Court in *Hoffman v. United States*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), found that "[t]o sustain the privilege it need only be evident in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed by his personal perceptions of the peculiarities of the case as by the facts actually in evidence.'" *Hoffman*, 341 U.S. at 486–87, 71 S.Ct. at 818, 95 L.Ed. at 1124.

Appellant cites *Norman v. State*, 588 S.W.2d 340 (Tex.Cr.App.1979), for the proposition that a state agent's claim of privilege under the Fifth Amendment is spurious. In *Norman, supra*, a conviction for delivery of heroin case, the informant-agent asserted a Fifth Amendment privilege against self-incrimination. This Court held that given the facts of the case the defendant had a right to call the informant-agent as a defense witness and offer his testimony to the jury. *Id.* at 345. Norman sought to present an entrapment defense through the informant. Agent Braswell, a narcotics officer, testified that the informant was involved in the transaction, did play a major part in bringing the actors together and was acting in accordance with his instructions. The informant asserted a Fifth Amendment privilege claim to questions concerning his relationship to one of the actors, his relationship to Agent Braswell, his role as a state agent and the heroin delivery. This Court concluded that the law is well settled that if an informant is actually working at the direction of and in conjunction with a state agent, the informant is acting as a State agent and his claim of privilege under the Fifth Amendment is spurious. *Id.* at 344.

■ The instant case is strikingly similar to *Norman*. Here, appellant sought to raise the issue of entrapment through Dal Bosco. The testimony revealed that Dal Bosco was involved in the transaction, brought the actors together, and was acting at the request of Officer Rankin. At trial Officer Rankin testified that Dal Bosco was a paid police informant that he had worked with on a number of cases. He testified that Dal Bosco spotted appellant and called him over to meet with appellant. He further testified appellant initially gave Dal Bosco a packet of cocaine and that Dal Bosco was paid a hundred dollars to "make the case." At the motion for a new trial hearing, Dal Bosco testified that he had been working as a confidential informant for at least a year before the instant transaction. He testified that he was given general instructions not to get directly involved in the cases. He further testified that earlier on the day of the delivery, Officer Rankin told him that he [Officer Rankin] wanted to make a buy from appellant and requested that he ride along with him to the vicinity of the transaction. Dal Bosco gave testimony that he initiated the

transaction. Under these facts Dal Bosco was actually working at the direction of Officer Rankin and thus, he was a state agent.

### III.

■ *Norman,* holds that an informant does not have a legitimate right to claim a privilege against self-incrimination under the Fifth Amendment once the informant acquires the status of a state agent. If *Norman* espouses a rule that an informant acting as a state agent cannot assert a legitimate right against self-incrimination, then the facts of the instant case would compel us to conclude that Dal Bosco's claim of privilege under the Fifth Amendment was spurious. However, we should be reluctant to accept a broad limitation of an informant's right against self-incrimination solely because the informant is a state agent. Such a rule ignores precedent that a claim against self-incrimination is a personal individual right and not a right that may be abridged based upon the status of the individual claiming such right. *Cherb v. State,* 472 S.W.2d 273, 277 (Tex.Cr.App.1971).

In *Boyer v. State,* 801 S.W.2d 897 (Tex.Cr. App.1991), a delivery of controlled substance case, this Court concluded that where an informant serves as an intermediary and acts as an agent for a law enforcement officer in carrying out his official duties, the intermediary cannot be held criminally responsible for his conduct.[4] Subsequently, the informant-agent does not have a legitimate Fifth Amendment claim with respect to testimony concerning his police sanctioned conduct. The informant-agent, however, does have a legitimate Fifth Amendment claim with respect to other acts that may be related to the subject offense.

Thus, if *Norman*'s rule is limited to questions that seek evidence about the informant's police sanctioned conduct in appre-

hending a suspect, then the informant's claim of privilege under such circumstances would be spurious. In this context he is immune from prosecution. We believe that this is the correct limitation because *Norman* is premised on a line of cases holding that state agents are not accomplices to illegal conduct of which they are charged to discover. *Norman* quotes *Ex parte Turner,* 545 S.W.2d 470 (Tex.Cr.App.1977) for the proposition that the law is well settled that if an informant is acting as a state agent, then the informant's claim of privilege under the Fifth Amendment is spurious. *Id.* at 344. In turn, *Turner, supra,* is premised upon *Woodward v. State,* 490 S.W.2d 850 (Tex.Cr.App. 1973) (holding that an undercover agent is not an accomplice as long as the agent does not bring about the crime, but merely obtains evidence to be used against those engaged in crime). *See also, Vela v. State,* 373 S.W.2d 505 (Tex.Cr.App.1963) (holding that an officer does not become a party to a crime if he participates therein, solely for the purpose of apprehending one engaged in crime); *Burns v. State,* 473 S.W.2d 19 (Tex.Cr.App.1971) (holding that a private citizen acting as undercover agent is not an accomplice witness so long as he does not bring about the crime). The foregoing cases demonstrate settled case law that state agents in ferreting out crime are not themselves parties to the crime as long as they do not bring about crime. Thus, they are not criminally responsible as long as their actions do not rise to a level of illegal conduct.

In *United States v. Melchor Moreno,* 536 F.2d 1042 (5th Cir.1976), the court held that the government informant should have been called to the witness stand and directed to give at least part of the testimony sought by the defense. The defendants raised an entrapment defense and sought to called the informant as a witness. The evidence suggested that the informant with respect to the

---

4. In *Boyer,* this Court reversed a court of appeals holding that under the law of parties if neither the informant nor the undercover agent could be convicted of an offense, then neither could the *defendant. The defendant transferred the drugs* to the informant who then transferred the drugs to the undercover agent. *Boyer* stands for the proposition that a confidential informant may be properly listed in the jury charge as a party to

the delivery by actual transfer, even though the informant could not, as an agent of law enforcement, be held criminally responsible for that offense. Although this is not the contention made here, the principle that the law enforcement officer or his agent cannot be criminally responsible for their legal conduct in apprehending a defendant applies in the context of the Fifth Amendment privilege asserted in this case.

offense charged was acting in cooperation with government agents. The court found that the informant failed to explain why his negotiations with the defendants over the heroin sale—the testimony most critical to the defendant's entrapment contention—would expose him to risk of prosecution. *Id.* at 1049. There the informant failed to establish entitlement to a Fifth Amendment privilege to the entire subject matter of his prospective testimony.

### IV.

 In the instant case, appellant informed the court that he wanted to raise the issue of entrapment through Dal Bosco. During the examination at trial Dal Bosco failed to establish why his testimony with respect to the cocaine delivery would subject him to criminal prosecution. A witness may not withhold all of the evidence demanded of him merely because some of it may be protected from disclosure by the Fifth Amendment. *Melchor Moreno, supra.* We hold that under the facts of this case, Dal Bosco's claim of privilege under the Fifth Amendment was too broad and therefore we find that it was spurious. Thus, the trial court erred in sustaining his Fifth Amendment claim.

We, therefore, reverse the judgment of the court of appeals and remand this cause to the court of appeals.

CLINTON and MEYERS, JJ., concur in the result.

BAIRD, J., dissents to the disposition of appellant's first ground for review and otherwise, joins the opinion.

McCORMICK, Presiding Judge, dissenting.

I dissent to the majority's disposition of appellant's second ground for review, and the remedy the majority provides as a result of sustaining that ground for review. I would dismiss appellant's petition for discretionary review as improvidently granted or affirm the judgment of the Court of Appeals.

In disposing of appellant's second ground for review, the majority opinion addresses the question of whether Dal Bosco had a right to assert the Fifth Amendment privilege. However, it appears appellant's major complaint in the trial court and the Court of Appeals is that Dal Bosco could only assert the privilege in open court before the jury.[1] See *Reese v. State,* 846 S.W.2d 437, 440 (Tex. App.–Houston [14th Dist.] 1992) (trial judge refused appellant's request to require Dal Bosco to assert the privilege in open court before the jury); see also majority opinion (appellant claims reversible error because the trial court refused to require Dal Bosco to testify before the jury). Even the majority opinion acknowledges that:

"Appellant's counsel agreed that Dal Bosco had a right to claim 'the 5th' but urged that he could only assert that right in open court before the jury."

Therefore, appellant apparently conceded the validity of Dal Bosco's Fifth Amendment claim, and it appears the majority reverses on an issue that never was adequately presented to either the trial court or the Court of Appeals. See Tex.R.App.Proc. 52(a).

In addition, the majority relies on *Norman v. State,* 588 S.W.2d 340 (Tex.Cr.App.1979), cert. denied, 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 261 (1980). However, *Norman* is distinguishable. In *Norman,* the defendant timely presented to the trial court "some twenty-four questions" the defendant wanted to ask on the issue of a "vicarious" entrapment defense. *Norman,* 588 S.W.2d at 344–45. This was necessary to inform the trial court and a reviewing court of the "materiality and relevancy" of the questions to determine whether the defendant was denied his Sixth Amendment right to present a defense. *Norman,* 588 S.W.2d at 345. Here, it appears appellant declined the trial court's invitation to question Dal Bosco further until the hearing on appellant's new trial motion, which was too late; see Tex.R.App.Proc. 52(a). Therefore, *Norman* does not support the result the majority reaches today.

Finally, the majority remands this case to the Court of Appeals to conduct a harm analysis pursuant to Tex.R.App.Proc.

---

1. This claim lacks merit. *Victoria v. State,* 522 S.W.2d 919 (Tex.Cr.App.1975).

81(b)(2). However, it appears to me the Court of Appeals has, in effect, conducted a harm analysis when it determined that Dal Bosco's testimony adduced at the new trial hearing was reflective and cumulative of other evidence which was insufficient to raise an entrapment defense.

> "Also, upon examining Dal Bosco's testimony in the hearing on the motion for new trial, we find no new or different evidence would have resulted from his testimony, as it was fairly reflective and cumulative of Officer Rankin's earlier statements." *Reese,* 846 S.W.2d at 440.

Remanding this case for a harm analysis is an exercise in futility and a waste of judicial resources. Appellant's petition for discretionary review should either be dismissed as improvidently granted or the judgment of the Court of Appeals should be affirmed. Because neither of these events occur, I dissent.

CAMPBELL and WHITE, JJ., join this dissent.