Criminal Case Template






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



EFRAIM GONZALES,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-04-00153-CR

Appeal from the

282nd District Court

of Dallas County, Texas

(TC# F-0351550-HS)




O P I N I O N

           Appellant, Efraim Gonzales, appeals a conviction of first-degree murder. In the
punishment phase, Appellant pleaded true to the enhancement paragraph in the indictment,
which the jury also found to be true. The jury sentenced the Appellant to life in prison, and
assessed a $10,000 fine. We affirm the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
           The victim, Alisynn Griffin, was a forty-nine-year-old woman who suffered from
alcoholism. She lived under a tarp on her family property after the house on the property
partially burned down. A friend of Alisynn, Ron Blackerby, lived on the property with her
and was her caretaker. Blackerby said that many people, including the Appellant, came to
the property to drink alcohol, use drugs, and party. Blackerby never saw Appellant do drugs,
but he did know that Appellant carried a knife. He testified that Appellant had an intimate
relationship with Alisynn.
           On the morning of May 12, 2003, Blackerby left Alisynn to go to work and saw
Appellant going up the path on his way to see Alisynn. Blackerby returned home around
5:30 or 6 that evening and found Alisynn’s body underneath the tent and covered with a
blanket. Blackerby checked her pulse and then discovered that her neck had been “slashed
all the way across.” He then ran to the nearest phone and dialed 9-1-1. Before Blackerby
returned to the crime scene to wait for the police, he ran into a neighbor down the street,
Zane Smith, who accompanied him up the hill to wait for the police. Blackerby was
questioned at the police station and his mouth was swabbed to obtain a DNA sample.
           Robert McKee arrived home from work around 5 p.m. on May 12, 2003. He saw a
Great Dane running loose in the neighborhood and, concerned for the dog’s safety, pursued
the dog in his black Dodge truck. McKee asked two men if they had seen the dog, and they
pointed up a nearby hill. McKee drove up the hill and saw the dog inside a partially burned-
down house. He also saw a Hispanic man urinating in the road, a naked woman on a
mattress underneath a tarp, and a second man nearby. When McKee asked them about the
dog, the Hispanic man, who was highly intoxicated, approached him and acted hostile. The
woman on the mattress, later identified as Alisynn Griffin, offered to give McKee the dog,
but he refused. McKee drove back down the hill and saw the two men he talked to earlier,
telling them “you’ve got some weird neighbors living up there.” McKee did not observe any
problems between the three people on top of the hill.
           Newman Zane Smith lived in Alisynn’s neighborhood and testified that they were
casual friends. He testified that Alisynn had many visitors to her property and he often heard
“a lot of commotion,” including gunshots, from the property. Smith knew that Ron
Blackerby often visited the property but did not know the Appellant. Smith said a man
driving a black truck stopped in front of his house around 5:15 p.m. to ask about a Great
Dane. Smith told the man the dog went up the hill, and the man drove up the hill and back
down a short time later, commenting that Smith had weird neighbors. Smith heard muffled
screams coming from Alisynn’s property around 6 p.m., but disregarded the screams because
of the prior disturbances on the property. He saw two men walk down the hill from the
property ten to fifteen minutes later who went in opposite directions. Fifteen minutes after
that, Smith saw Mr. Blackerby arrive at the property. Blackerby returned down the hill a
short time later and told Smith that Alisynn had been murdered.
           The police arrived at the scene and an investigation ensued. Appellant became a
possible suspect and was arrested for outstanding traffic warrants on the morning of May 14,
2003. Appellant signed a written consent to search form, and during the search of
Appellant’s residence, police found a bloody knife on a shelf next to Appellant’s bed. The
blood later proved to be Alisynn’s blood. Appellant was taken to the police station for
questioning, and Appellant’s girlfriend, Dovie Gonzales, also went to the police station for
questioning. A DNA sample was obtained from Appellant and an appointment was made to
take Appellant’s dental impressions.
           Appellant wrote out and signed a written statement. Appellant wrote that he had been
drinking and smoking marijuana and crack cocaine with Alisynn all day, and when he asked
her for sex, she became loud and ordered him off the property. He did not remember any
other details. Appellant later signed a second statement that he dictated to one of the officers. 
In the second statement, he admitted that he had severely injured Alisynn. Appellant stated
she became mad at him for asking for sex. He got up from the bed and she kicked him in the
back and she may have hit him with a bottle. She yelled at Appellant to get off of her
property. He then shoved her down by grabbing her with his right hand. Appellant stated
in his statement that he squeezed her neck until she stopped screaming and telling him to
leave. He thought that he had broken her larynx. That was all he could remember.
           Dovie Gonzales testified that she was Appellant’s common-law wife. She stated that
Appellant phoned her on the day of the murder and asked her to drive to a convenience store
to pick him up. When she got to the store, Appellant was very intoxicated and he told her
that the believed he had stabbed a man who had tried to take his beer away from him. She
had given a written statement to the police, and she admitted that she had written in that
statement that she failed to mention anything about a man or a beer; she only stated that
Appellant had stated that he thought he had hurt someone.
           Ron Blackerby testified that he took care of Alisynn and was a good friend. He
related that the had sexual intercourse with her on the night prior to her murder. He stated
that Appellant was one of her boyfriends. He had seen Appellant and an individual named
Teo Lopez party and be intimate with Alisynn. He had never seen Appellant and Alisynn in
a physical fight; although, he knew that Appellant carried a knife.
           The medical examiner testified that Alisynn’s body was covered with about ten bite
marks and multiple contusions. There was DNA present in the bite marks which matched
DNA samples taken from Appellant. Also, the indentations of the bite marks on the body
matched dental impressions taken from Appellant. The medical examiner testified that
Alisynn died from a combination of a stab wound to the neck, and from suffocation due to
a plastic bag that was shoved down her throat. The witness also stated that it was possible
that Alisynn had also been strangled.
II. DISCUSSION
           In Appellant’s first issue, he contends that the trial court erred in failing to include in
the jury charge the lesser-included offense of aggravated assault, asserting that there was
evidence showing Appellant was guilty only of aggravated assault and not murder. A person
commits the offense of aggravated assault if he intentionally, knowingly, or recklessly causes
bodily injury to another or uses or exhibits a deadly weapon during the commission of the
assault. See Tex. Penal Code Ann. § 22.01(a)(1), 22.02(a)(2) (Vernon Supp. 2005). A
person commits the offense of murder if he intentionally or knowingly causes the death of
an individual, or intends to cause serious bodily injury and commits an act clearly dangerous
to human life that causes the death of an individual. See Tex. Penal Code Ann. §
19.02(b)(1), (2) (Vernon 2003). In the present case, the jury was instructed on the two
theories of murder: intentional murder and serious bodily injury murder. Appellant requested
that the trial court include an instruction on the lesser-included offense of aggravated assault.
           To determine whether Appellant was entitled to a charge on the lesser-included
offense, we apply a traditional two-prong test. See Bignall v. State, 887 S.W.2d 21, 23 (Tex.
Crim. App. 1994); Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App.), cert.
denied, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); Royster v. State, 622 S.W.2d
442, 446 (Tex. Crim. App. 1981); Bartholomew v. State, 882 S.W.2d 53, 54-55 (Tex.
App.--Houston [14th Dist.] 1994, pet. ref’d); Ramirez v. State, 976 S.W.2d 219, 226-27 (Tex.
App.--El Paso 1998, pet. ref’d). First, the lesser-included offense must be included within
the proof necessary to establish the offense charged. Bignall, 887 S.W.2d at 23; Ramirez,
976 S.W.2d at 227. Second, some evidence must exist in the record that would permit a jury
rationally to find that if the defendant is guilty, he is guilty only of the lesser offense.
Ramirez, 976 S.W.2d at 227. The credibility of the evidence and whether it conflicts with
other evidence or is controverted may not be considered in making the determination of
whether the lesser-included offense should be given. See Gadsden v. State, 915 S.W.2d 620,
622 (Tex. App.--El Paso 1996, no pet.); Barrera v. State, 914 S.W.2d 211, 212 (Tex.
App.--El Paso 1996, pet. ref’d). Regardless of its strength or weakness, if any evidence
raises the issue that the defendant was guilty only of the lesser offense, then the charge must
be given. Saunders v. State, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992). An accused is
guilty only of a lesser-included offense if there is evidence that affirmatively rebuts or
negates an element of the greater offense, or if the evidence is subject to different
interpretations, one of which rebuts or negates the crucial element. See Ramirez, 976 S.W.2d
at 227. It is not enough that the jury may disbelieve crucial evidence pertaining to the greater
offense. See Skinner v. State, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997), cert. denied,
523 U.S. 1079, 118 S.Ct. 1526, 140 L.Ed.2d 677 (1998). Rather, there must be some
evidence directly germane to the lesser-included offense for the jury to consider before an
instruction on the lesser-included offense is warranted. See Ramirez, 976 S.W.2d at 227. 
The first prong of the test in this case has been satisfied, as it has been established that
aggravated assault is a lesser-included offense of murder. See Cardenas v. State, 30 S.W.3d
384, 392 (Tex. Crim. App. 2000). Therefore, we must only determine if there is evidence
in the record that shows Appellant is guilty of only aggravated assault rather than murder.
           In a case similar to the case at bar, the Court of Criminal Appeals held that the
evidence did not warrant a charge on the lesser-included offense of aggravated assault where
a man was convicted of voluntary manslaughter and testified that he was afraid of the victim,
but did not intend to kill the victim, but instead only intended to shoot him. Forest v. State,
989 S.W.2d 365, 368 (Tex. Crim. App. 1999). The court found that the defendant intended
to cause serious bodily injury to his victim and committed an act clearly dangerous to human
life. Id. Therefore, the evidence showed defendant was guilty of serious bodily injury
murder, and not only of aggravated assault. Id.; see also Harrell v. State, 659 S.W.2d 825,
827 (Tex. Crim. App. 1983) (holding that a defendant who intended to cause serious bodily
injury but did not intend to kill the victim was guilty of murder and there was no evidence
that he was only guilty of aggravated assault).
           As stated, in the present case, the jury was charged with both intentional murder as
well as serious bodily injury murder. The Appellant signed a written statement admitting that
he strangled Alisynn to the point where he thought he might have broken her larynx, which
is an act clearly dangerous to human life. Additionally, Appellant admitted to his common-law wife, Dovie Gonzales, that he had stabbed someone, which is also an act clearly
dangerous to human life. Although he did not tell Dovie that he had stabbed Alisynn, a knife
was found in his apartment with traces of Alisynn’s blood. Thus, intent to cause serious
bodily injury can be shown through Appellant’s written statement as well as physical
evidence found, and, according to medical reports, this serious bodily injury led to Alisynn’s
death. See Dale v. State, 90 S.W.3d 826, 833 (Tex. App.--San Antonio 2002, pet. ref’d)
(holding defendant was not entitled to a jury charge on the lesser-included offense of
aggravated assault where defendant stated that he did not intend to kill the victim, yet there
was evidence that showed intent to cause serious bodily injury to the victim). In this case,
there is no evidence from which a jury could rationally acquit the defendant of the greater
offense of murder while convicting him of the lesser-included offense of aggravated assault.
See Mathis v. State, 67 S.W.3d 918, 925 (Tex. Crim. App. 2002). Therefore, Appellant’s
Issue No. One is overruled.
           In Issue No. Two, Appellant argues that the trial court erred in failing to charge the
jury on the mitigating issue of whether the Appellant caused the death while under the
immediate influence of sudden passion arising from an adequate cause. At the punishment
stage of a trial, the defendant may raise the issue as to whether he caused the death under the
immediate influence of sudden passion arising from an adequate cause. Tex. Penal Code
Ann. § 19.02(d) (Vernon 2003). If the defendant proves the issue in the affirmative by a
preponderance of the evidence, the offense is a felony of the second degree. Id. “Sudden
passion” means passion directly caused by and arising out of provocation by the individual
killed or another acting with the person killed which passion arises at the time of the offense
and is not solely the result of former provocation. Id. § 19.02(a)(2). “Adequate cause”
means cause that would commonly produce a degree of anger, rage, resentment, or terror in
a person of ordinary temper, sufficient to render the mind incapable of cool reflection. Id.
§ 19.02(a)(1).
           A sudden passion charge should be given if there is some evidence that the mental
state of the defendant “rose beyond a bare claim of fear or was so strong and overpowering
that it rendered him incapable of rational thought and collected action . . . .” Jones v. State,
963 S.W.2d 177, 180 (Tex. App.--Fort Worth 1998, pet. ref’d). Appellant is entitled to a
sudden passion charge if there is some evidence to support it, even if that evidence is weak,
impeached, contradicted, or unbelievable. Trevino v. State, 100 S.W.3d 232, 238 (Tex. Crim.
App. 2003). An appellate court must therefore consider all of the evidence raised at trial,
regardless of the strength of the evidence or whether it is controverted. Reese v. State, 877
S.W.2d 328, 333 (Tex. Crim. App. 1994). Yet, the evidence may not be so weak, contested,
or incredible that it could not support a finding by a rational jury. Moore v. State, 969
S.W.2d 4, 11 (Tex. Crim. App. 1998). “The mere fact that a defendant acts in response to
the provocation of another is not sufficient to warrant a charge on sudden passion.” Trevino,
100 S.W.3d at 241. Instead, there must be some evidence that the defendant was under the
immediate influence of sudden passion. Id. Anger alone is generally not considered
sufficient to find that Appellant acted under the influence of sudden passion. See Gutierrez
v. State, 85 S.W.3d 446, 451 (Tex. App.--Austin 2002, pet. ref’d) (observing that “anger does
not rise to the level of adequate cause”). The appellate court reviews evidence offered in
support of a defensive issue in the light most favorable to the defense. Benavides v. State,
992 S.W.2d 511, 525 (Tex. App.--Houston [1st Dist.] 1999, pet. ref’d). An instruction on
sudden passion must be submitted if there is some evidence of (1) a legally adequate cause
that would produce anger, rage, resentment, or terror sufficient to render an ordinary person
incapable of cool reflection, and (2) the accused’s excited and agitated state of mind arising
out of provocation by the victim or someone acting with the victim at the time of the killing. 
Id. at 526.
           In the case at bar, Appellant claims that Alisynn kicked him in the back and yelled at
him to leave the property when he propositioned her for sex. Appellant thought that Alissyn
might have hit him in the head with a bottle, but was not sure. While these acts may have
provoked anger in the Appellant, there is no evidence showing that the provocation caused
Appellant, even though intoxicated, to act out of anger to a sufficient degree that rendered
him incapable of cool reflection. Cf. Lopez v. State, 716 S.W.2d 127,129 (Tex. App.--El
Paso 1986, pet. ref’d) (holding that although Appellant showed evidence of fear and anger
toward the victim, the evidence did not show anger or fear that rose to a level sufficient to
render Appellant incapable of cool reflection). Additionally, sudden passion does not allow
for the murderous acts of a person not of ordinary temper or whose response to the
provocation is not objectively common in the ordinary, reasonable person. See id.; see
Saldivar v. State, 980 S.W.2d 475, 506 (Tex. App.--Houston [14th Dist.] 1998, pet. ref’d). 
Strangling, suffocating, biting and stabbing someone is not an objectively common response
an ordinary reasonable person would make toward a person who kicked them, screamed at
them, and possibly hit them with a bottle. In reviewing all the evidence, there is no evidence
indicating that Appellant acted from sudden passion arising from an adequate cause, thus
Appellant’s Issue No. Two is overruled.
           In Issue No. Three, Appellant claims the trial court erred in admitting into evidence
nine prejudicial photographs. Eight of the photographs depict the slashed throat of the
victim, and one of the photographs depicts an anal tear. Appellant claims jurors relied upon
emotion created by these photographs when finding Appellant guilty.
           Tex. R. Evid. 403 provides: “Although relevant, evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice, confusion of
the issues, or misleading the jury, or by considerations of undue delay or needless
presentation of cumulative evidence.”
           A trial court’s ruling in admitting or excluding evidence is reviewed by abuse of
discretion and must be upheld if reasonably supported by the record and correct on any
theory of law applicable to the case. Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim. App. 
2002). The ruling admitting or excluding evidence must be reviewed in light of what was
before the trial court at the time the ruling was made. Id. Rule 403 creates a presumption
of admissibility of all relevant evidence and authorizes a trial judge to exclude such evidence
only when there is a clear disparity between the degree of prejudice of the offered evidence
and its probative value. Mozon v. State, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999). A
court may consider several factors in determining whether the probative value of photographs
is substantially outweighed by the danger of unfair prejudice. Hayes v. State, 85 S.W.3d 809,
815 (Tex. Crim. App. 2002). These factors include the number of exhibits offered, their
gruesomeness, their detail, their size, whether they are in color or in black and white, whether
they are close-up, and whether the body depicted is clothed or naked. Id. However, a court
is not limited to this list, and availability of other means of proof as well as circumstances
unique to each case should also be considered. Id. In addition, autopsy photographs are
generally admissible unless they depict mutilation of the victim caused by the autopsy itself. 
Id. at 816. The admissibility of a photograph is within the sound discretion of the trial judge
who determines whether the exhibit serves a proper purpose in the enlightenment of the jury.
Ramirez v. State, 815 S.W.2d 636, 646-47 (Tex. Crim. App. 1991); Burdine v. State, 719
S.W.2d 309 (Tex. Crim. App. 1986).
           Appellant claims that the photographs provided cumulative evidence that was offered
to the jury through the medical examiner’s testimony. Yet it has consistently been held that
photographs are generally admissible where verbal testimony about the same matters is
admissible. Ramirez, 815 S.W.2d at 647. Visual evidence accompanying testimony is most
persuasive and often gives the fact finder a point of comparison against which to test the
credibility of a witness and the validity of his conclusions. Chamberlain v. State, 998 S.W.2d
230, 237 (Tex. Crim. App. 1999), cert. denied, 528 U.S. 1082 (2000). Further, the
photographs, although gruesome, can be admissible if they depict only the reality of the
brutal crime committed. Id.
           In the instant case, there are nine photos in question, taken both from the crime scene
as well as autopsy photos. Eight of the photographs show the victim’s slashed neck and
naked body, while the ninth photograph shows an anal tear. Although the victim is naked,
her genitals are covered in all photographs. Some photos also depict a plastic bag in the
victim’s mouth. It could not be determined whether the anal tear happened before or after
the victim’s death. The photographs are probative of the manner of the victim’s death, which
was determined by the medical examiner to be a combination of a stab wound and
suffocation, and are also probative of Appellant's culpable mental state since he claims he
did not intend to kill the victim. See Burdine, 719 S.W.2d at 317 (holding that photographs’
probative value outweighed their prejudicial effect where photographs were cumulative of
other evidence, gruesome and detailed, depicted a bloody, partially clothed body, and showed
the nature, location, and extent of the wounds); see Ramirez, 815 S.W.2d at 647 (holding
photographs admissible alongside testimony of the same as photographs were probative of
the manner of victim’s death as well as of defendant’s culpable mental state); see Laca v.
State, 893 S.W.2d 171, 180 (Tex. App.--El Paso 1995, pet. ref’d) (holding that photographs
of the deceased which are limited in number and reflect the manner of the deceased’s death
and the Appellant’s mental state are relevant, and more probative than prejudicial). Because
the probative value of the photographs admitted outweigh the prejudicial effect, the trial
court did not abuse its discretion in admitting the photographs as evidence. Appellant’s Issue
No. Three is overruled.
           We affirm the judgment of the trial court.
 
                                                                  RICHARD BARAJAS, Chief Justice
December 29, 2005

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)