NO. 12-03-00155-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
GERRY DON MCKINNEY,                              §                 APPEAL FROM THE 124TH
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 GREGG COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            A jury convicted Gerry Don McKinney (“Appellant”) of murder, sentenced him to
imprisonment for forty years, and assessed a $10,000 fine. In one issue on appeal, Appellant
contends the trial court committed reversible error by denying his request for a jury instruction on
sudden passion at the punishment phase of the trial. We affirm.
 
BackgroundOn August 13, 2002, Appellant and his nineteen-year-old son, Jeremy McKinney
(“McKinney”), drank beer throughout the day while cleaning the house and working in the yard. 
Later that evening, McKinney left the house to visit his friend, Jessie Elliott (“Elliott”). Appellant
and McKinney’s girlfriend, Samantha Garner


 (“Garner”), left Appellant’s house at 2:00 a.m. on
August 14 in search of McKinney. 
            Not finding McKinney at Elliott’s house, Appellant and Garner continued driving and soon
found McKinney at a convenience store. There, Appellant and McKinney argued in the parking lot. 
After words were exchanged, Appellant demanded that McKinney get in the car with him. Appellant
drove off with McKinney in the car, and Garner rode with Elliott. Before reaching their house,
McKinney refused to ride any further with Appellant, electing to walk the last block or two home. 
Driving the few blocks to Appellant’s house, Garner and Elliott saw McKinney walking up to his
house. Appellant had already parked the car and gone inside the house when Garner and Elliott
arrived.
            Once McKinney arrived at the home and walked inside the house, he immediately moved
toward Appellant, pushing and shoving him. Garner and Elliott attempted to break up the fight
several times. Appellant began to retreat from the fight toward his bedroom. He removed a pistol
from his pocket. McKinney said, “What are you going to do? Are you going to f____g shoot me?” 
McKinney pushed Appellant through the door and onto the floor. The gun fired and a bullet traveled
through the bedroom door, hitting McKinney in the eye. Appellant immediately tried to help his son
and yelled for someone to call 911. McKinney died from the single gunshot wound to his head. 
            Longview Police Officer David Hazel (“Hazel”) arrested Appellant. Appellant was
subsequently indicted for murder. See Tex. Pen. Code Ann. § 19.02(b) (Vernon Supp. 2004). He 
pleaded not guilty and proceeded to trial before a jury. 
            At trial, Elliott testified that McKinney was outraged because Appellant looked for him and
insisted that he leave the convenience store with him. Elliott saw McKinney hit the neighbor’s
mailbox with his fist just before McKinney walked into his house and attacked Appellant. Appellant
and McKinney were “one big mass, and two bodies trying to hold each other, and fighting, and
hitting.” When he saw Appellant pull the gun out of his pocket, Elliott ran down the hall. He heard
Appellant say, “What if I just shot you?” Elliott stated Appellant was trying to scare him so that he
would “back off.” McKinney responded, “Go ahead and shoot me.” Elliott was turning to go inside
a bedroom when he saw McKinney push Appellant through the door into Appellant’s bedroom. 
Almost immediately afterward, he heard the gunshot. Elliott then returned to the hallway and saw
Appellant and Garner leaning over McKinney. Appellant was crying, screaming, and “freaking out.” 
            Mark Goodson testified that he was filling his vehicle with gas at the convenience store and
witnessed a verbal altercation between Appellant and McKinney. Appellant was upset with
McKinney about McKinney’s marijuana use. Appellant searched for something in his car and then
said, “I’ll shoot you right between the eyes and blow your brains out.” McKinney responded, “Go
ahead. I don’t care.” McKinney eventually got in the car with Appellant, and Appellant “burned
out” as he was leaving the store. Goodson never saw a weapon.
            Officer Hazel testified that when he arrived at Appellant’s house, Appellant was holding his
son in his arms and sobbing. Longview Police Department Detective Dan Reigstad stated that
Appellant was leaning over McKinney’s body as Emergency Medical Services personnel were
working to save McKinney. He characterized the scene as “hectic.” 
            Officer Douglas Humphrey of the Longview Police Department was also called to the scene. 
He overheard Appellant say that he had put his gun in his pocket when he went looking for his son. 
Then, after he arrived back at the house and the fight ensued, he pulled the gun out of his pocket,
pointed it upwards, and pulled the trigger. Humphrey noticed a strong smell of alcohol on
Appellant’s breath.
            Detective Terry Davis, a detective with the Longview Police Department, took Appellant’s
statement. He read the statement into the record at trial. The following portion is relevant to
Appellant’s issue:
 
Jeremy [McKinney] comes in arguing with Samantha [Garner]. I tried to calm them down. When I
did this, Jeremy then jumped at me and shoved me and pushed on me and told me that it was none of
my business. I had the pistol stuck in my pants pocket. Jeremy and I wrestled around in the living
room. I went towards my room to go and put up the pistol. I pulled it out of my pocket as I got near
my doorway to my bedroom. There was an end table right at the doorway. I tripped over the end
table. I was sort of walking backwards at the time. I was yelling at Jeremy and he at me as I was
going to my room. I had the pistol in my right hand. I am right handed. I sort of stumbled, I shot the
pistol accidentally and I saw Jeremy fall to the floor. I dropped the pistol and went to him. I was
hysterical. I was hollering for someone to call 911. I was trying to stop the bleeding. I never meant
to shoot my son.


            Appellant testified on his own behalf. He denied threatening to “blow somebody’s head off”
when he was in the convenience store parking lot. While driving McKinney home, Appellant
stopped the car at McKinney’s request and allowed him to get out of the car. Then, he went into the
house and sat at his desk for a short time. He was worried that McKinney was walking back to the
convenience store and would be in danger. Appellant got his gun, put it into his pocket, and headed
to the door to go after him. However, McKinney walked through the door at that time and
“advanced quickly” upon him, “screaming and hollering at me to mind my own business, it wasn’t
any of my business.” 
            McKinney was intoxicated. Appellant admitted he was probably intoxicated as well.
Appellant denied threatening to shoot his son, although he admitted that when he took the gun from
his pocket, McKinney “said something to me about shooting or something to that effect.” As
Appellant reached his bedroom, McKinney pushed him. Appellant fell, breaking his desk. It was
then that the gun went off. Appellant claimed he was not aiming the gun and had no intention of
firing it. He testified that the gun went off accidentally and he never meant to hurt his son. 
            The jury found Appellant guilty of murder. During the punishment phase, Appellant objected
to the court’s charge and requested submission of a sudden passion instruction. The trial court
denied the request, and the jury sentenced Appellant to imprisonment for 40 years and assessed a
$10,000 fine. This appeal ensued.
 
Jury Charge
            In his sole issue, Appellant asserts the trial court erred by denying his request for a jury
instruction on sudden passion at the punishment stage of trial. 
Standard of Review and Applicable Law
            We review evidence offered in support of a defensive issue in the light most favorable to the
defense. Pennington v. State, 54 S.W.3d 852, 856 (Tex. App.–Fort Worth 2001, pet. ref’d). In
considering whether any evidence is raised on this punishment issue, we review the record from both
the guilt-innocence and punishment phases of the trial. Trevino v. State, 100 S.W.3d 232, 238 (Tex.
Crim. App. 2003). We must consider all of the evidence raised at trial, regardless of the strength of
the evidence or whether it is controverted. Reese v. State, 877 S.W.2d 328, 333 (Tex. Crim. App.
1994).
             An accused is entitled to an instruction on every defensive issue raised by the evidence
whether that evidence is strong, weak, contradicted, unimpeached, or unbelievable. Muniz v. State,
851 S.W.2d 238, 254 (Tex. Crim. App. 1993); Benavides v. State, 992 S.W.2d 511, 526 (Tex.
App.–Houston [1st Dist.] 1999, pet. ref’d). If the record reveals any evidence that the appellant acted
under the immediate influence of sudden passion arising from an adequate cause, the trial court
should instruct the jury on this mitigating issue. Trevino, 100 S.W.3d at 237. The evidence may
not, however, be so weak, contested, or incredible that it could not support such a finding by a
rational jury. See Moore v. State, 969 S.W.2d 4, 11 (Tex. Crim. App. 1998); Benavides, 992
S.W.2d at 526. “The mere fact that a defendant acts in response to the provocation of another is not
sufficient to warrant a charge on passion. Instead, there must be some evidence that the defendant
was under the immediate influence of sudden passion.” Trevino, 100 S.W.3d at 241. 
            During the punishment phase, a defendant may raise the issue as to whether he caused the
death of an individual under the immediate influence of sudden passion arising from adequate cause. 
Tex. Pen. Code Ann. § 19.02(d) (Vernon Supp. 2004). If the defendant can prove the issue of
sudden passion by a preponderance of the evidence, the offense is a felony of the second degree
rather than of the first degree. Tex. Pen. Code Ann. § 19.02(c), (d) (Vernon Supp. 2004). “Sudden
passion” is defined as “passion directly caused by and arising out of provocation by the individual
killed or another acting with the person killed which passion arises at the time of the offense and is
not solely the result of former provocation.” Tex. Pen. Code Ann. § 19.02(a)(2) (Vernon Supp.
2004). “Adequate cause” is “cause that would commonly produce a degree of anger, rage,
resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool
reflection.” Tex. Pen. Code Ann. § 19.02(a)(1) (Vernon Supp. 2004).
Analysis
            There is evidence, disregarding any inconsistencies and weaknesses, that Appellant only
wanted to scare McKinney and that he had no intent to harm or murder McKinney. Elliott and
Garner both testified that McKinney immediately “advanced upon” Appellant as he walked in the
door of the house. The evidence also shows that both Appellant and McKinney were quite angry. 
They were yelling at each other, fighting, and wrestling. Further, both Elliott and Garner testified
that immediately before the gun was fired, McKinney was taunting Appellant verbally and then
pushed him to the floor. As Appellant fell to the floor, his body struck a desk, breaking part of it. 
            This evidence raises issues of accident, self-defense, and anger, and even suggests that
Appellant might have been afraid. However, evidence of fear alone, or self-defense, is not sufficient
to raise sudden passion. See Gonzales v. State, 717 S.W.2d 355, 357 (Tex. Crim. App. 1986). For
a claim of anger or fear to rise to the level constituting sudden passion, Appellant’s mind must have
been rendered incapable of cool reflection. See id. (holding that sudden passion instruction not
required where there was no testimony indicating defendant was emotionally aroused at time of
shooting). 
            In Fry v. State, 915 S.W.2d 554, 558 (Tex. App.–Houston [1st Dist.] 1995, no pet.), Fry
testified at trial that when the victim and his friend broke into his house, the victim had a wooden
stake in his pocket. Fry claimed he was afraid of the victim because of his reputation for being a
“trained killer,” so he got his rifle. Id. After wrestling over the rifle, the victim and his friend left
the house. Id. Fry then stepped out onto the front porch with the rifle, claiming he heard the victim
telling his friend to “[g]o get the gun.” Id. The victim then put his hands in his pants pocket and
threatened Fry’s life. Id. Stating that he had no intention of hurting anyone, and that the gunshots
were intended only to “scare” the victim, Fry fired the gun twice, killing the victim. Id. The
Houston Court of Appeals found that this testimony showed a reflective and deliberate response to
a perceived threat, not a spontaneous response to anger, rage, resentment, or terror. Id.
            In this case, Appellant testified that once he arrived at his house from picking up McKinney 
from the convenience store, “I was upset, but I wasn’t out of control mad.” He also stated that once
his son came into the house and “advanced upon” him, they wrestled around a bit. Then, he pulled
the gun from his pocket “to just get it out – get it away from the situation.” When asked why at that
particular moment he pulled the pistol from his pants pocket, he replied, “The shorts I was wearing,
it was pulling my shorts down all the time that we were scuffling.” He then said that he pulled the
gun out of his pocket and aimed up, “[a]nd he [McKinney] stepped in front of me when I pulled the
trigger.” He also stated that “[t]he sight of the gun I thought would scare him and make him leave
me alone.” 
            This evidence does not reflect fear or anger that was so strong and overpowering that it
rendered Appellant incapable of rational thought and collected action. As in Fry, the evidence
shows a reflective and deliberate response to a perceived threat, not a spontaneous response to anger,
rage, resentment or terror. This testimony is not evidence that Appellant was rendered incapable of
cool reflection. The mere fact that Appellant acted in response to McKinney’s provocation is not
sufficient to warrant a charge on sudden passion. See Trevino, 100 S.W.3d at 241. Instead, evidence
must show that he was under the immediate influence of sudden passion. See id. Because there is
no evidence that Appellant acted under the immediate influence of sudden passion arising from an
adequate cause, the trial court did not err in refusing to submit a charge on sudden passion to the jury
on punishment. Consequently, we overrule Appellant’s sole issue.
 
Disposition
            Having overruled Appellant’s sole issue, we affirm the trial court’s judgment.
 
 
 
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
 
Opinion delivered August 18, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
















(DO NOT PUBLISH)