In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-02-00909-CR




DAEQUINJAMIN LAVOR WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 874733




MEMORANDUM OPINION ON REHEARING
          We withdraw our Opinion of March 11, 2004 and issue this one in its stead. 
Appellant’s motions for rehearing and rehearing en banc are denied. 
          A jury convicted appellant, Daequinjamin Lavor Williams, of murder and
assessed punishment at 45 years’ confinement. In three points of error, appellant
contends that the trial court erred by (1) allowing the investigating homicide officer
to give his direct opinion that two State’s witnesses were telling the truth in their
statements to police, (2) allowing hearsay statements implicating appellant as the
murderer, and (3) refusing to submit appellant’s requested jury charge on sudden
passion. We affirm.
Background
          After drinking several alcoholic beverages at home with his girlfriend, Ina
Egenriether, on the evening of April 7, 2001, Robert “Bobby” Brown made a phone
call to arrange a meeting to buy some crack cocaine. Brown and Egenriether drove
in Brown’s truck to get the crack cocaine at a gas station near Aldine Bender and
Highway 59. There, appellant, who Egenriether knew as “Booger” or “Bubba” from
previous drug purchases from him, delivered a couple of crack cocaine rocks to
Brown in return for a $50 bill. As Brown pulled away in his truck, appellant started
yelling that the money that Brown gave him was not real. Brown reassured appellant
that the money was real, but appellant kept yelling that it was not. Appellant
threatened to shoot Brown, so Brown returned the crack cocaine to appellant.
Appellant left in his car, keeping both the money and crack cocaine. 
          Brown screamed that he was going to get his money back, and he chased
appellant’s car with his truck. A “very short quick chase” lasting under a minute
ensued, and Brown rammed his truck into the rear of appellant’s car. Appellant then
partially climbed out of the passenger door’s window and aimed a gun toward
Egenriether, who was in Brown’s passenger seat. She ducked and heard gunshots. 
When Egenriether looked up, she saw that Brown had a bullet wound in his head. 
Egenriether got out of the truck and sought help.
          After the shooting, Egenriether was taken to the police station where she gave
an initial statement to Houston Police Department Officer R. Martinez indicating that
she did not know the identity of the shooter. When she returned to the house she
shared with Brown, she called her friend, Danny Roberts, to pick her up because she
was afraid that appellant would try to shoot or kill her. She immediately informed
Roberts that it was “Booger” who had killed Brown following their disagreement
about the money. Roberts encouraged her to call the police with the information. 
          Approximately eight days later, Officer Martinez and another investigator came
to Roberts’s house where Egenriether was staying. Egenriether gave the investigators
a revised statement, identifying appellant as the individual who shot and killed
Brown, explaining to the investigators that she had previously failed to identify
appellant as the shooter because she feared he would harm her. Egenriether identified
appellant from a photospread as the person who killed Brown, and Roberts identified
appellant from the photospread as the person he knew as “Booger.” 
Opinion Rebuttal Testimony
          In his first point of error, appellant contends that “the trial court erred in
allowing the investigating homicide officer to give his direct opinion that the State’s
two witnesses implicating appellant as the killer were telling the truth.” Appellant
argues that, by allowing Officer Martinez to answer questions regarding the veracity
of Egenriether and Roberts, Martinez supplanted the jury’s role as “lie detector” and
“crossed the line” by injecting his personal and expert opinion. 
          A trial court’s decision to admit evidence is reviewed for an abuse of
discretion. Goff v. State, 931 S.W.2d 537, 553 (Tex. Crim. App. 1996); Pierre v.
State, 2 S.W.3d 439, 442 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d). A trial
court’s ruling must be upheld if reasonably supported by the record and correct on
any theory of law applicable to the case. Willover v. State, 70 S.W.3d 841, 845 (Tex.
Crim. App. 2002). It is generally improper for a witness to offer a direct opinion as
to the truthfulness of another witness. See Schutz v. State, 957 S.W.2d 52, 59 (Tex.
Crim. App. 1997). This type of testimony is inadmissible because it does more than
“assist the trier of fact to understand the evidence or to determine a fact in issue”; it
decides an issue for the jury. Yount v. State, 872 S.W.2d 706, 709 (Tex. Crim. App.
1993). Evidence, however, which is used to fully explain a matter opened up by the
other party need not be ordinarily admissible. Parr v. State, 557 S.W.2d 99, 102
(Tex. Crim. App. 1997); Fisher v. State 121 S.W.3d 38, 40 (Tex. App.—San Antonio
2003) (holding defense opened the door to questions concerning whether child was
telling the truth). An opposing side has a right to reply and correct a false impression
left with the jury. See Goldberg v. State, 95 S.W.3d 375, 386 (Tex. App.—Houston
[1st Dist.] 2002, pet. ref’d). But, the party offering the evidence may not “stray
beyond the scope of the invitation.” Schutz, 957 S.W.2d at 71 (holding that “general”
testimony asserting manipulation or fantasy, which is admissible, does not open the
door to inadmissible testimony that specific allegations are not the result of
manipulation or fantasy.) 
          To determine whether appellant’s trial counsel opened the door to the State’s
questions concerning Egenriether’s credibility, we must review the chronology and
content of Officer Martinez’s testimony concerning Egenriether.
State’s Direct Examination of Martinez
          Officer Martinez testified that, on the night of the shooting, Egenriether told
him what happened, but he “felt there was probably something more to it” because
there were “little gaps here and there.” Martinez testified that it appeared that
Egenriether was very scared, fearful, and confused, which was consistent with his
experience that people who go through traumatic episodes are sometimes forgetful. 
He also testified that it was common to have witnesses to a murder unwilling to get
involved for fear of retaliation or getting in trouble. 
          Officer Martinez testified that, when he took Egenriether’s first written
statement at the police station, she was “very shaken” and was still wearing blood-stained clothes. The State asked, “Even after you took her statement, did you feel like
there was still something missing or she wasn’t completely honest with you?” The 
Officer replied, “Yes.” 
          Martinez testified that, when he took her second statement, in which she
implicated appellant as the shooter, Egenriether’s demeanor was “collected,” although
she was still upset about the incident. Martinez testified that her second statement
was consistent with the physical evidence, the eyewitness evidence, and her extreme
emotion and demeanor on the night of the shooting. 
Appellant’s Trial Counsel’s Cross-Examination of Martinez
          Appellant’s trial counsel asked Officer Martinez if his testimony that
Egenriether left things out when she spoke to him the night of the shooting was
another way of his saying that “she was lying”; he replied “Yes.” Appellant’s trial
counsel then asked, “And that affects her credibility, when witnesses lie to you,
correct?” Officer Martinez replied that it would if she was involved in the
wrongdoing. 
          After establishing that Roberts was an ex-convict, appellant’s trial counsel
asked, “still it doesn’t change the fact that people who run in those kind of circles and
been to the penitentiary all the time are not credible, generally; isn’t that correct?” 
Martinez replied, “I would agree.” After Martinez acknowledged that police officers
pressured Egenriether to tell the truth, appellant’s counsel asked, “Right. And quit
lying to you, right?” Martinez replied, “Right.” 
State’s Redirect Examination of Martinez
          During the State’s redirect examination of Officer Martinez, the following
exchange occurred:
State: Officer Martinez, just a couple of quick questions. You
said before the break that persons who have felony
convictions are not credible. Do you remember saying that
earlier in your testimony?
 
Witness:Yes.
 
State:Did you believe, based upon your investigation and your
interviews and your assessment of this case, that
[Egenriether] is credible?



 
. . . 
 
          Witness:      Yes. Yes. I felt she was.
 
State:Do you believe that she was telling the truth when she said
that this man shot Bobby Brown?
 
. . . 
 
Witness:Yes. 
 
          State:           Did you believe that Danny Roberts was credible?
 
. . . 
 
Witness:Yes.
 
Analysis
          During the State’s direct examination of Officer Martinez and after he
explained that it was common for witnesses to be fearful of retaliation or hesitant to
get involved, the State specifically asked Martinez if he felt that “there was still
something missing or [Egenriether] wasn’t completely honest with [him].” We
conclude that this question opened the door to questions about the veracity of
Egenriether’s statement to the police. However, during cross-examination of
Martinez, appellant’s counsel went beyond the scope of the opened door by delving
into Martinez’s opinion of Egenriether’s credibility as a witness. The question “and
that affects her credibility, when witnesses lie to you, correct?” resulted in the jury’s
hearing that Egenriether’s lies to Martinez could have caused him to disbelieve her
had she been involved in the wrongdoing. This response left the false impression
with the jury that Martinez may have doubted Egenriether’s credibility as a witness. 
          Martinez’s testimony established that Roberts was a five-time ex-convict. 
Egenreither had previously testified that she was on deferred adjudication for
possession of cocaine. Appellant’s counsel asked Officer Martinez his opinion about
the credibility of people who have been to the penitentiary. Appellant’s counsel
asked, “still it doesn’t change the fact that people who run in those kind of circles and
been to the penitentiary all the time are not credible, generally; isn’t that correct?” 
Martinez replied, “I would agree.” Although the questions of Officer Martinez were
general in nature, by placing Roberts and Egenriether into a category of people who
“run in those kind of circles” with people who have been to the penitentiary, the
question, nonetheless, impliedly called for Officer Martinez’s opinion about
Roberts’s and Egenriether’s credibility as witnesses. Appellant’s counsel, thus,
opened the door to the State’s questions concerning whether Martinez believe Roberts
and Egenriether were credible as witnesses. 
          We conclude that, because appellant’s trial counsel posed questions asking the
officer if he thought Roberts and Egenriether were credible witnesses based on their
criminal contacts and questions asking if the officer thought that Egenriether was a
credible witness because of her lies in her statement, appellant’s counsel opened the
door to the State’s questions that directly commented on whether the officer believed
the witnesses were truthful and credible witnesses. 
          We overrule point of error one.
Hearsay
          In his second point of error, appellant contends that “the trial court erred in
allowing Danny Roberts to testify about Egenriether’s hearsay statements implicating
appellant as the murderer.” Appellant argues that Egenriether’s statements to Roberts
could not be admissible under the excited utterance exception to hearsay because they
fell short of the “emotional threshold” requirement, were not spontaneous, and did not
result from impulse.
          A trial court has broad discretion in determining whether evidence is
admissible as an exception to the hearsay exclusionary rule. See Zuliani v. State, 97
S.W.3d 589, 595 (Tex. Crim. App. 2003); Kubin v. State, 868 S.W.2d 394, 396 (Tex.
App.—Houston [1st Dist.] 1993, pet. ref’d). 
          Over trial counsel’s hearsay objections, Roberts testified that “She wanted me
to come get her because she was afraid Booger was going to come shoot her, too.” 
However, Roberts testified without objection to the following evidence: Brown called
“Booger” for some dope; when they got the dope, appellant said the money was not
real; appellant grabbed the money and dope and took off; Brown ran into appellant
with his truck at a high rate of speed; appellant reached out the window and shot three
times at the windshield of Brown’s truck; Egenriether jumped down on the
floorboard; Egenriether got scared and took off running across the freeway trying to
wave someone down; “Booger” did it; and Egenriether was scared that he would
come after her.
          Although he complains about Roberts’s testimony, appellant failed to object
when the same evidence was presented again. When similar evidence is admitted
without objection, overruling an objection to evidence will not result in reversal. See
Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). Any error in the
admission of hearsay testimony is harmless in light of other unobjected-to evidence
proving the same fact. Brooks v. State, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999). 
          We overrule appellant’s second point of error.
Sudden Passion
          In his third point of error, appellant argues that the trial court erred, in the
punishment phase of trial, by refusing to instruct the jury on whether appellant caused
Brown’s death under the immediate influence of sudden passion. 
          During the punishment phase, a defendant may raise the issue as to whether he
caused the death of an individual under the immediate influence of sudden passion
arising from adequate cause. Tex. Pen. Code Ann. § 19.02(d) (Vernon Supp. 2004). 
If the defendant can prove the issue of sudden passion by a preponderance of the
evidence, the offense is a felony of the second degree rather than of the first degree.
Id. “Sudden passion” is defined as “passion directly caused by and arising out of
provocation by the individual killed or another acting with the person killed which
passion arises at the time of the offense and is not solely the result of former
provocation.” Tex. Pen. Code Ann. § 19.02(a)(2) (Vernon Supp. 2004). “Adequate
cause” is defined as “cause that would commonly produce a degree of anger, rage,
resentment, or terror in a person of ordinary temper, sufficient to render the mind
incapable of cool reflection.” Tex. Pen. Code Ann. § 19.02(a)(1) (Vernon Supp.
2004). A sudden passion charge should be given if there is some evidence showing
that appellant’s mental state “rose beyond a bare claim of fear or was so strong and
overpowering that it rendered him incapable of rational thought and collected action.”
Jones v. State, 963 S.W.2d 177, 180 (Tex. App.—Fort Worth 1998, pet. ref’d); see
also Trevino v. State, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003). 
          An accused is entitled to an instruction on every defensive issue raised by the
evidence whether that evidence is strong, weak, contradicted, unimpeached, or
unbelievable. Muniz v. State, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993); 
Benavides v. State, 992 S.W.2d 511, 526 (Tex. App.—Houston [1st Dist.] 1999, pet.
ref’d). We must, therefore, consider all of the evidence raised at trial, regardless of
the strength of the evidence or whether it is controverted. Reese v. State, 877 S.W.2d
328, 333 (Tex. Crim. App. 1994).
          Consequently, if the record reveals any evidence that appellant acted under the
immediate influence of sudden passion arising from an adequate cause, the trial court
should instruct the jury on this mitigating issue. Trevino, 100 S.W.3d at 237. The
evidence may not, however, be so weak, contested, or incredible that it could not
support such a finding by a rational jury. See Moore v. State,  969 S.W.2d 4, 11 (Tex.
Crim. App. 1998); Benavides, 992 S.W.2d at 526. “The mere fact that a defendant
acts in response to the provocation of another is not sufficient to warrant a charge on
sudden passion. Instead, there must be some evidence that the defendant was under
the immediate influence of sudden passion.” Trevino, 100 S.W.3d at 241.
          We review evidence offered in support of a defensive issue in the light most
favorable to the defense. Benavides, 992 S.W.2d at 525. The trial court must submit
an instruction on sudden passion if there is some evidence of: (1) a legally adequate
cause that would produce anger, rage, resentment, or terror sufficient to render an
ordinary person incapable of cool reflection and (2) the accused’s excited and agitated
state of mind arising out of provocation by the victim or someone acting with the
victim at the time of the killing. Id. at 526. In considering whether any evidence is
raised on this punishment issue, we review the record from both the guilt-innocence
and punishment phases of the trial. Trevino, 100 S.W.3d at 238. 
          Appellant contends that under Moore v. State, 969 S.W.2d 4 (Tex. Crim. App.
1998), he was entitled to a jury charge on the issue of sudden passion because the
circumstances of the offense raised the issue. The evidence in Moore involved the
following, as described in the opinion:
In this case, Tyron Parks testified that the shootings took place in the
highly charged atmosphere of a fight. He said that the victims, Boyd
and Clark, were acting hostile and intoxicated. At one point during the
altercation, Parks thought Boyd was trying to pull a pistol out. Later,
Boyd pushed the appellant, and then tried to grab Parks. Parks
considered cutting Boyd’s throat, but then decided against it and threw
Boyd to the ground. Boyd got up and ran over to the car in the street
next to the club, where Clark was revving the engine. Clark tried to run
over the appellant and Parks with the car, missed, and then backed up
and tried again. It was at this point that the appellant got a rifle and shot
Boyd and Clark. 
 
Id. at 11. The court concluded that based on those facts, a jury could have rationally
found that such events would commonly produce a degree of anger, rage, resentment,
or terror in a person of ordinary temper, sufficient to render the mind incapable of
cool reflection. Id. 
          Here, appellant did not testify at the punishment phase of trial and his
testimony at the guilt stage of trial claimed that he was not present at the shooting. 
Thus, there is no direct evidence that appellant acted out of sudden passion arising
from adequate cause. Nonetheless, if the circumstances of the offense are sufficient
to raise the issue of sudden passion arising from an adequate cause, appellant would
be entitled to the jury instruction. See id. Appellant contends that because Brown
generally used crack cocaine, argued with appellant over money, chased appellant
with his truck, became angry with appellant, yelled at appellant twice using
obscenities, and rammed his truck once into appellant’s smaller car, the circumstances
of the offense are sufficient to raise the sudden passion issue, thus, requiring a jury
charge. We conclude that these circumstances, without more, are insufficient to raise
the issue that appellant was incapable of rational thought and collected action. Cf.
Trevino, 100 S.W.3d at 239 (holding that some evidence of sudden passion consisted
of the defendant “freaking out,” “scared and panicked,” “crying and shaking,”
“pacing,” “consistently upset and crying,” “sounded distressed,” and “looked past”
the investigator). There is no evidence in the record showing that appellant shot
Brown because of anger, rage, resentment or terror or that appellant’s mind was
incapable of cool reflection. 
          We hold that the trial court was not presented with any evidence that
appellant’s situation rendered him incapable of rational thought. See Jones, 963
S.W.2d at 180. Nor does the record support appellant’s claim that he was acting with
sudden passion arising at the time of the offense. See Trevino, 100 S.W.3d at 238. 
Thus, we hold that the trial court did not err in denying appellant’s request to instruct
the jury on the issue of sudden passion in the punishment phase of the trial. 
          We overrule appellant’s third point of error.
 
 
 
Conclusion
We affirm the judgment of the trial court.
 
George C. Hanks, Jr.
                                                             Justice
Panel consists of Justices Nuchia, Alcala, and Hanks.
Do not publish. Tex. R. App. P. 47.4.